DELBELLO DONNELLAN WEINGARTEN
WISE & WIEDERKEHR, LLP
*Attorneys for the Debtor*
1 North Lexington Avenue
White Plains, New York 10601
(914) 681-0200
Jonathan S. Pasternak, Esq.
Erica Feynman Aisner, Esq.


UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:

                                      Chapter 11

THREE ON TWO FOURTEEN, LLC,         Case No. 12-46404(JF)


                      Debtor.
------------------------------------------------------------X


## THIRD AMENDED LIQUIDATING CHAPTER 11 PLAN


      Three on Two Fourteen, LLC (the "Debtor") hereby proposes the following Third Amended Liquidating Chapter 11 Plan pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

## ARTICLE I
## DEFINITIONS


      For the purposes of this Plan, and the Disclosure Statement simultaneously filed by the Debtor, the following terms shall have the respective meanings set forth below (such meanings to be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires):

      1.1    *"Administrative Claims"* shall mean all costs and expenses of administration of the Chapter 11 Case Allowed under §§ 503(b) or 330(a) of the Bankruptcy Code and that are entitled to priority under §507(a)(2) which may include

Claims pursuant to §506(c) of the Bankruptcy Code.

1.2    *"Administrative Professional Fee Claim"* shall mean any Claim of a professional retained under the Bankruptcy Code subject to allowance under §330 of the Bankruptcy Code, or an order of the Bankruptcy Court.

1.3    *"Allowed"* shall mean that portion of a Claim or Interest that, (i) has been timely filed with the Bankruptcy Court and is liquidated in amount and has not been objected to; (ii) has been listed by the Debtor in the Schedules as being neither contingent, unliquidated nor disputed; or (iii) has been allowed by a Final Order of the Bankruptcy Court.

1.4    *"Ballot"* shall mean the form transmitted to creditors with the Plan and Disclosure Statement, on which they may vote to accept or reject the Plan pursuant to Bankruptcy Rule 3018 and §1126 of the Bankruptcy Code.

1.5    *"Bankruptcy Code"* shall mean title 11 of the United States Code, 11 U.S.C. §§ 101, et seq.

1.6    *"Bankruptcy Court"* shall mean the United States Bankruptcy Court for the Eastern District of New York.

1.7    *"Bankruptcy Rule(s)"* shall mean the Federal Rules of Bankruptcy Procedure as applicable to a case under the Bankruptcy Code and the Local Rules of the Bankruptcy Court, together with all amendments and modifications made from time to time thereto.

1.8    *"Cash"* shall mean legal tender of the United States of America or Cash equivalents.

1.9    *"Chapter 11 Case"* shall mean the Chapter 11 proceeding pending in the

Eastern District of New York encaptioned *In re Three on Two Fourteen, LLC*, Case No. 12-46404(JF).

1.10    *"Claim"* is defined in Section 101(5) of the Bankruptcy Code, and shall include, without limitation, any claims of whatsoever type or description against the Debtor, any claim for pre-petition interest, post-petition interest or contingent interest, any claim against the Debtor arising out of the rejection of executory contracts, any claim against the Debtor arising from the recovery of property under §§ 550 and 553 of the Bankruptcy Code and any claim against the Debtor that does not arise until after the commencement of the Chapter 11 Case for a tax entitled to priority under §507(a) of the Bankruptcy Code.

1.11    *"Condominiums"* shall collectively mean the Debtor's condominium units located at 214 Richardson Street, Brooklyn, New York 11211 consisting of seven (7) unsold residential condominium units, a commercial unit (sometimes referred to as the artists' studio), four garage spaces and a community facility unit.

1.12    *"Confirmation Date"* shall mean the date upon which the Confirmation Order is entered by the Bankruptcy Court.

1.13    *"Confirmation Order"* shall mean the order of the Bankruptcy Court pursuant to §1129 of the Bankruptcy Code confirming the Plan.

1.14    *"Debtor"* shall mean Three on Two Fourteen, LLC.

1.15    *"Disputed"* shall mean a Claim or Interest, or any portion of a Claim or Interest, that is not Allowed.

1.16    *"Effective Date"* shall mean the date upon which the Confirmation Order becomes a Final Order.

1.17    *"Eulisis"* shall mean Eulisis Capital LLC as assignee of People's United Bank as successor in interest to Bank of Smithtown, the current mortgagee of the Debtor's Condominiums.

1.18    *"Eulisis Secured Claim"* shall mean the Allowed Secured Claim of Eulisis in the Allowed amount of $3,915,849.72, as of May 2, 2013, plus interest at the per diem rate of $664.20 until the Effective Date after which interest shall accrue at the *prime rate*, as announced in the Wall Street Journal on the Effective Date, plus 2%, less adequate protection payments made thereafter, plus reasonable attorneys' fees incurred on or after February 2, 2013 in an amount no more than $17,500.

1.19    *"Final Order"* shall mean an order or judgment which has not been stayed and as to which order or judgment the time to appeal or seek review or rehearing has expired and as to which no appeal, petition for review or rehearing is pending.

1.20    *"Interest"* shall mean the rights of the holders of the membership interests of the Debtor.

1.21    *"Market Termination Date"* shall mean one year after the Effective Date, which shall be the date by which the Debtor must either satisfy the remaining balance due on Eulisis' Secured Claim or conduct an auction to liquidate the remaining Condominiums.

1.22    *"Minimum Release Price"* shall mean the amount of Net Sale Proceeds that the estate must receive from the sale of any Condominium unit under the Plan.

1.23    *"Net Sale Proceeds"* shall mean all funds remaining after the sale of each Condominium unit after the payment of all closing costs including but not limited to real estate attorney legal fees, title charges, real estate brokers' commission, typical

adjustments including but not limited to condominium common charges for the month of sale, real estate taxes and utilities.

1.24    *"Non-Tax Priority Claim"* shall mean any Claim against the Debtor to the extent entitled to priority in payment under §507(a)(4)-(6) of the Bankruptcy Code.

1.25    *"Petition Date"* shall mean September 4, 2012.

1.26    *"Plan"* shall mean this Third Amended Liquidating Chapter 11 Plan and any amendments hereto or modifications hereof made in accordance with the provisions of the Bankruptcy Code.

1.27    *"Priority Claim"* shall mean a Claim, other than an Administrative Claim, that is entitled to priority under §507 of the Bankruptcy Code.

1.28    *"Priority Tax Claim"* shall mean a Claim against the Debtor to the extent entitled to priority in payment under §507(a)(8) of the Bankruptcy Code.

1.29    *"Professionals"* shall mean those Persons: (a) retained by the Debtor pursuant to an order of the Bankruptcy Court in accordance with Sections 327 and 1103 of the Bankruptcy Code providing for compensation for services rendered prior to the Effective Date pursuant to Section 327, 328, 329, 330 and 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b)(2)  of the Bankruptcy Code.

1.30    *"Pro Rata"* shall mean proportionally according to the total amount of Allowed Claims or Allowed Interests in a particular Class.

1.31    *"Secured Claim"* shall mean a Claim that is secured by a lien on property of the Debtor's estate in accordance with §506(a) of the Bankruptcy Code.

1.32    *"Schedules"* shall mean the schedules of assets and liabilities and the

statement of financial affairs filed by the Debtor as required by §521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments thereto.

1.33    *"Unsecured Claim"* shall mean any Claim that is not an Administrative Claim, Priority Claim or Secured Claim.

## ARTICLE II
## DESIGNATION  OF CLAIMS AND INTERESTS

All Claims, as defined herein and in §101(5) of the Bankruptcy Code against the Debtor, of whatever nature, whether or not scheduled or liquidated, absolute or contingent, and all Interests in the Debtor, whether resulting in an Allowed Claim or an Allowed Interest or not, shall be bound by the provisions of the Plan and are hereby classified as follows:

2.1    Classification of Claims. Section 2.2 sets forth the designation of the Classes of Claims and Interests. A Claim or Interest is classified in a particular Class for voting and distribution purposes only to the extent that the Claim or Interest qualifies within the description of the Class and is classified in a different Class or Classes to the extent any remainder of the Claim or Interest qualifies within the description of that different Class or Classes. Unless otherwise provided, to the extent a Claim or Interest qualifies for inclusion in a more specifically defined Class than a more generally defined Class, it shall be included in the more specifically defined Class. Each of the following sections of this Article II provides explanations of the different Claim classifications. Administrative Expense Claims, Administrative Professional Fee Claims, U.S. Trustee's Fees, and Priority Tax Claims have not been classified and are excluded from the Classes set forth in Section 3.2 in accordance with §1123(a)(1) of the Bankruptcy Code.

2.2    <u>Classes</u>. For purposes of the Plan, those persons holding Claims against, or Interests in, the Debtor are grouped in accordance with §1122 of the Bankruptcy Code as follows:

<u>Class 1</u>:        shall consist of the Allowed Secured Claims of the New York City Department of Finance.

<u>Class 2</u>:        shall consist of the Allowed Secured Claim of Eulisis.

<u>Class 3</u>:        shall consist of the Allowed General Unsecured Claims.

<u>Class 4</u>:        shall consist of all Allowed Interests in the Debtor.

## ARTICLE III - TREATMENT OF CLAIMS UNDER THE PLAN

3.1    <u>Unclassified Claims</u>.

(a)    <u>Allowed Administrative Claims other than Claims of Professionals</u>:  These Allowed Claims shall be paid in the ordinary course and according to the terms and conditions of the respective contracts with respect to those Claims.

(b)    <u>Allowed Administrative Professional Fees</u>:  Allowed Administrative Professional Fee Claims shall be paid in full, Pro Rata, in Cash, from 10% of the Net Sale Proceeds from the sale of each the Condominium unit until paid in full. The Professionals reserve their right to see payment of their Allowed Administrative Professional Fees pursuant to 11 U.S.C. Sections 330 and 506(c).

(c)    <u>United States Trustee's Fees</u>:  Under the Plan, all United States Trustee statutory fees arising under 28 U.S.C. § 1930 and 31 U.S.C. § 3717 shall be paid in full, in Cash, in such amount as they are incurred in the ordinary course of business by the Debtor.  The Debtor shall be responsible for the payment of United States Trustee quarterly fees through the entry of a final decree closing the Chapter 11 Case or dismissal

or conversion of the case, whichever happens earlier.

(d)    <u>Allowed Priority Tax Claims</u>:  Allowed Priority Tax Claims, if any, shall be paid in full, in Cash, on the Effective Date, in full and final satisfaction of all Claims as against the Debtor.

3.2    <u>Classified Claims</u>

(a)    <u>Class 1:</u> Class 1 consists of the Allowed Secured Claims of the New York City Department of Finance which arises out of a New York City administrative lien for unpaid water and sewer charges which is secured by a statutory lien on the Condominiums. This Claim shall be paid in full from the Net Sale Proceeds from the first Condominium sale together with any applicable interest or charges authorized and proscribed by applicable law. The holder of the Class 1 Allowed Secured Claim is unimpaired and as such, shall not be entitled to vote on the Plan.

(b)    <u>Class 2</u>:  Class 2 consists of the Eulisis Secured Claim, which is secured by a lien on the Condominiums, in accordance with §506(a) of the Bankruptcy Code and shall be paid in full under this Plan.  Under the Plan, Eulisis shall retain its first priority lien and security interests in the Condominiums. After payment in full of the Allowed Class 1 Claim, Eulisis shall be repaid from 90% of the Net Sale Proceeds until such time as all Allowed Administrative Professional Fees are paid in full, at which time Eulisis shall be entitled to 100% of such Net Sale Proceeds until the Allowed Class 2 Claim is paid in full. Eulisis shall be required to release its lien from each Condominium Sale in exchange for receipt of 90% of Net Sale Proceeds. Upon payment in full of the Allowed Class 2 Claim, Eulisis shall tender to the Debtor a release of all remaining liens on the Condominiums.

Until such time as Eulisis is paid in full, it shall be entitled to receive monthly interest only debt service payments (the "Debt Service Payment"), commencing on the Effective Date, calculated based upon the Allowed Class 2 Claim, at the *prime rate* of interest, as announced in the Wall Street Journal on the Effective Date, plus 2%. The Debt Service Payment shall be personally guaranteed by the Debtor's managing member, John Ruha and to the extent that the Debtor's income is not sufficient to fund such payments, Mr. Ruha shall satisfy any shortfall from his personal funds.

Notwithstanding the foregoing, in the event that the Debtor satisfies the Eulisis Secured Claim on or before six (6) months after the Effective Date, the Eulisis Secured Claim, together with any interest due thereon, shall be reduced in the amount of $50,000.

The Class 2 Eulisis Secured Claim is impaired pursuant to § 1124 of the Code and as such, Eulisis shall be entitled to vote on the Plan.

(c)    Class 3: Class 3 shall consist of Allowed Unsecured Claims. Holders of Allowed Class 3 Claims shall receive a Pro Rata distribution from the Net Sale Proceeds after full payment to the unclassified Claims and Classes 1 and 2, in full. Distributions shall be made no later than ten (10) days after the closing of each condominium sale, if the Net Proceeds yield monies available for distributions to holders of Allowed Class 3 Claims. The Debtor shall pay to holders of Class 3 Claims up to 100% of their Allowed Unsecured Claims, without post-petition or post-Confirmation interest. The Allowed Class 3 Claim of John Ruha, the Debtor's Managing Member and holder of a 50% membership Interest, shall be subordinated to all other Allowed Class 3 Claims and he shall receive no distribution on account of such Claim until all other Allowed Class 3

Claims are paid in full. Class 3 Allowed Unsecured Claims are impaired pursuant to §1124 of the Bankruptcy Code and as such, are entitled to vote on the Plan.

       (d)    <u>Class 4</u>: Holders of Allowed Class 4 Interests shall receive a pro rata portion of the remaining Net Sale Proceeds, if any, after payment in full of Class 1, 2 and 3 Claims, with the amount of such distribution to be based upon the particular percentage of Interest held.  Class 4 Interest holders are unimpaired and are deemed to have accepted the Plan.

       3.3    <u>Acceptance by Impaired Classes of Claims</u>:  Classes 2 and 3 shall have accepted the Plan if (i) the holders (other than any holder designated under §1126(e) of the Bankruptcy Code) of at least two-third in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (ii) more than one-half in number of the holders (other than any holder designated under §1126(e) of the Bankruptcy Code) of such Allowed Claims actually voting in such Class have voted to accept the Plan.

       3.4    <u>Presumed Acceptance of the Plan</u>.  Classes 1 and 4 are deemed unimpaired under the Plan, and, therefore, are deemed to accept the Plan under §1126(f) of the Bankruptcy Code.

       3.5    <u>Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.</u> In the event that a particular Class of Creditors does not vote in favor of the Plan, the Debtor intends to seek Confirmation pursuant to Section 1129(b) of the Bankruptcy Code.

## ARTICLE IV
## MEANS FOR EXECUTION

4.1      Means For Implementation.   The Plan shall be funded with Net Sale Proceeds. All Allowed Class 1 and 2 Claims shall be issued payment as required hereunder at the closing of each Condominium unit. The Debtor shall remit distributions, if any, to all Allowed Class 3 Claims within ten (10) business days of each closing.

4.2      Sale of the Condominiums. The Debtor shall continue to use its best efforts to market and sell the Condominiums until the earlier of (i) such time as all remaining Condominium units are sold or (ii) the Market Termination Date. No later than five (5) business days prior to the closing for each Condominium, the Debtor shall provide Eulisis with, (1) a closing statement detailing estimated gross proceeds of sale and estimated costs associated therewith, (2) a copy of the contract of sale and (3) a copy of the release to be executed by Eulisis. At suchclosing, the Debtor shall convey all of its right, title and interest in and to the respective Condominium, free and clear of all liens, claims, encumbrances, other interests, debts, causes of action, obligations, liabilities, and charges of any kind, nature or description whatsoever, whether fixed or contingent, legal or equitable, perfected or unperfected (collectively, "Liabilities"). Except as expressly permitted or otherwise specifically provided for in the Plan or the Confirmation Order, all persons and entities asserting Liabilities of any kind or nature whatsoever against or in Debtor or the Condominiums (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinated), including but not limited to the holders of Class 1, 2 or 3 Claims, arising under or out of, in connection with, or in any way relating to, Debtor, the Condominium,

11

or the transfer of the Condominiums, shall be forever barred, estopped, and  permanently enjoined from asserting such Liabilities against the respective purchaser, its successors or assigns, its property, or the Condominiums.

4.3     The Debtor may not sell any Condominium for a sale price which will result in Net Proceeds in an amount less than the agreed upon Minimum Release Price for such unit absent the written consent of Eulisis.

4.4     Exemption from Transfer Taxes.   Pursuant to section 1146(a) of the Bankruptcy Code, neither (i) the issuance, transfer or exchange of any security under, in furtherance of, or in connection with, the Plan, nor (ii) the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale or assignments executed in connection with any disposition of assets contemplated by the Plan, (including sale of the Condominium units), shall be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax.

4.5     Market Termination Date, Extension and Auction. In the event that the Debtor is unable to sell all of the Condominiums by the Market Termination Date, the Debtor shall, within sixty (60) days thereafter, either (i) pay the remaining balance of the Allowed Class 2 Claim in full or (ii) conduct a public auction of the Condominiums, which auction shall be advertised and marketed by a reputable and experienced auctioneer selected by the Debtor. The net proceeds of such auction, after the payment of all auction related expenses, shall be distributed in accordance with Article III of this Plan. Eulisis shall be entitled to credit bid the remaining balance of its Allowed Class 2 Claim at the auction pursuant to 11 U.S.C. Section 363(k).  The Debtor shall be entitled

to one six (6) month extension of the Market Termination Date provided that a Closing has occurred on no less than three (3) Condominium units by such deadline ("Extended Market Termination Date").

4.6    <u>Continued Operations of the Debtor</u>.  The Debtor shall continue to operate the Condominium, in its discretion and utilizing its business judgment, which operations shall include the rental of such units. The Debtor shall be permitted to maintain its operating cash, which shall be defined as net rental income after the payment of all ordinary course operating expenses, including monthly debt service as provided for in Section 3.2(b) herein. All remaining operating cash shall be distributed in accordance with Section 3.2 upon the sale of the last Condominium unit. The Debtor shall maintain all cash, whether derived from operations or sale, in a depository authorized for the Eastern District of New York.

4.7    Any property or notice which a person or entity is or becomes entitled to receive pursuant to the Plan shall be delivered by regular mail, postage prepaid, in an envelope addressed to that person or entity at the address indicated on a properly filed proof of Claim or, absent such a proof of Claim, the address that is listed for that person or entity on the Schedules; <u>provided</u> that any person or entity entitled to a distribution may notify the Debtor in writing of its change of address, which address shall become the address for the Debtor to mail further distributions, if any.  The distribution date shall be the date of mailing, and the property distributed in accordance with this Section shall be deemed delivered to such person or entity regardless of whether such property is actually received by that person or entity.

4.8    Except as otherwise provided herein, in the event any claimant fails to

Claim any distribution within six (6) months from the date of such distribution, such claimant shall forfeit all rights thereto, and to any and all future payments, and thereafter the Claim for which such Cash was distributed shall be treated as a disallowed Claim. All unclaimed Cash shall be periodically redistributed by the Debtor in accordance with Section 3.2.

**ARTICLE V**
**EXECUTORY CONTRACTS**

5.1     <u>Assumption of Executory Contracts</u>. Any contract that is executory and any unexpired leases to which the Debtor is a party and which has not been assumed or rejected pursuant to the Bankruptcy Code during the pendency of this Chapter 11 Case, shall be deemed rejected as of the Petition Date pursuant to §§365 and 1123 of the Bankruptcy Code.

**ARTICLE VI**
**GENERAL AND MISCELLANEOUS PROVISIONS**

6.1     <u>Modification of the Plan</u>.  The Debtor reserves the right, in accordance with §1127 of the Bankruptcy Code, to amend or modify the Plan with order of the Bankruptcy Court as may be required.  After the Effective Date, the Debtor may, in accordance with §1127 of the Bankruptcy Court, remedy any defect or omission or reconcile any inconsistencies in the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan. The Plan shall not be materially modified without giving notice to all creditors and parties in interest and an opportunity to object.

6.2     <u>Article and Section References</u>**.** Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or

exhibit to the Plan.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

      6.3    <u>Payment Dates</u>**.** If any payment or act under the Plan is required to be made or falls on a date which shall be a Saturday, Sunday or a legal holiday, the making of such payment or performance of such act may be completed on the next succeeding business day, and shall be deemed to have been completed timely.

      6.4    <u>Notices</u>**.** Any notices to be forwarded under the Plan shall be in writing and sent by certified mail, return receipt requested, postage pre-paid; or by overnight mail or hand delivery, addressed as follows:

**If to the Debtor:**

THREE ON TWO FOURTEEN, LLC
214 Richardson Street
Brooklyn, New York 11211
Attn: John Ruha, Managing Member

with a copy to:

DELBELLO DONNELLAN WEINGARTEN
WISE & WIEDERKEHR, LLP
One North Lexington Avenue
White Plains, New York 10601
Attn:   Erica Feynman Aisner, Esq.

The Debtor may designate in writing any other address for purposes of this section, which designation shall be effective upon receipt.  Any payment required under the Plan shall be deemed to have been paid on the date when such payment is mailed.

      6.5    <u>Enforceability</u>**.** Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability or

operative effect of any and all other provisions of the Plan.

6.6    <u>Applicable Law</u>**.** Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York, except to the extent that other provisions of Federal law are applicable.

6.7    <u>Successors and Assigns</u>**.**  The rights and obligations of any entity named or referred to in the Plan shall be binding upon and inure to the benefit of the successors and assigns of such entity.

6.8    <u>Reservation of Rights</u>**.**  Neither the filing of this Plan, nor any statement or provision contained herein, shall be or be deemed to be an admission against interest. In the event that the Effective Date does not occur, neither this Plan nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of this Chapter 11 Case.

6.9    <u>U.S. Trustee Fees and Post-Confirmation Reports</u>**.** The Debtor shall be responsible for filing quarterly post-confirmation reports with the Bankruptcy Court and shall pay all quarterly fees required under 28 U.S.C. § 1930 and applicable interest under 31 U.S.C. § 3717, until the earlier of (a) conversion or dismissal of this Chapter 11 Case or (b) entry of a final decree closing this Chapter 11 Case. The Debtor shall be responsible for scheduling regular post-Confirmation status conferences in this case until the earlier of (a) conversion or dismissal of this Chapter 11 Case or (b) entry of a final decree closing this Chapter 11 Case.

6.10    <u>Withdrawal or Revocation of the Plan</u>. The Debtor reserves the right to revoke or withdraw the Plan prior to the Effective Date. If the Debtor revokes or

withdraws the Plan, then the result shall be the same as if the Confirmation Order was not entered and the Effective Date did not occur.

6.11    <u>Conditions to Withdrawal, Modifications and Amendments</u>. Any act to amend, modify, revoke or withdraw the Plan shall require the consent of the Debtor. The Bankruptcy Court shall have sole and exclusive jurisdiction over any disputes regarding the foregoing.

6.12    <u>Preservation of Insurance</u>.  The discharge and release of the Debtor as provided in this Plan shall not diminish or impair the enforceability of any insurance policies that may cover Claims against the Debtor or other person.

6.13    <u>Post-Effective Date Powers</u>. After the Effective Date, the powers of the Debtor shall include, but not be limited to, the following:

(a)    Operate, maintain, repair and manage the Condominium in its ordinary course of business;

(b)    Negotiate terms, execute transactional documents including but not limited to Contracts of Sale and do all that is customarily necessary to effectuate the sale of the Condominiums;

(c)    Engage professionals, as necessary, to perform the aforementioned powers; and

(d)    Such other responsibilities and obligations as may be vested in the Debtor or as may assumed pursuant to order of the Bankruptcy Court or pursuant to this Plan or the Bankruptcy Code.

6.14    <u>Post-Effective Date Management.</u> The Debtor's principal, John Ruha, will continue to manage the affairs of the Debtor. He shall not receive any compensation for

such services.

6.15    Confirmation Order. The Confirmation Order shall ratify all transactions effected by the Debtor during the period commencing on the Petition Date and ending on the Confirmation Date except for any acts constituting willful misconduct or gross negligence or that are avoidance under §549 of the Bankruptcy Code.

6.16    Application for Final Decree: In accordance with Bankruptcy Rule 3022 and Local Bankruptcy Rule 3022-1, the Debtor shall file an application and a proposed order for a final decree within ninety (90) days after Confirmation on notice to the office of the United States Trustee. This deadline may be extended or reduced by the Court for cause shown.

6.17    Interpretation, Rules of Construction, Computation of Time, and Choice of Law.

(a)    The provisions of the Plan shall control over any descriptions thereof contained in the Disclosure Statement.

(b)    Any term used in the Plan that is not defined in the Plan, either in Article I (Definitions) or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules. Without limiting the foregoing, the rules of construction set forth in §102 of the Bankruptcy Code shall apply to the Plan, unless superseded herein. The definitions and rules of construction contained herein do not apply to the Disclosure Statement or to any Exhibits to the Plan except to the extent expressly so stated in the Disclosure Statement or in such Exhibit to the Plan.

(c)     The words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan as a whole and not to any particular Article, Section, subsection or clause contained in the Plan, unless the context requires otherwise.

(d)     Unless specified otherwise in a particular reference, all references in the Plan to Articles, Sections and exhibits are references to Articles, Sections and Exhibits of or to the Plan.

(e)     Any reference in the Plan to a contract, document, instrument, release, bylaw, certificate, indenture or other agreement being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions.

(f)     Any reference in the Plan to an existing document or exhibit means such document or exhibit as it may have been amended, restated, modified or supplemented as of the Effective Date.

(g)     In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

(h)     All Exhibits to the Disclosures Statement are incorporated into the Plan, and shall be deemed to be included in the Plan, regardless of when filed.

(i)     Subject to the provisions of any contract, certificate, bylaws, instrument, release, indenture or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules.

## ARTICLE VII
## RESOLUTION OF DISPUTED CLAIMS & RESERVES

7.1     Objections.    An objection to either the allowance of a Claim or an amendment to the Debtor's Schedules shall be in writing and filed with the Bankruptcy Court no later than forty-five (45) days after the Effective Date.

7.2     Amendment of Claims.    A Claim may be amended after the Effective Date only as agreed upon by the Debtor and the holder of such Claim. After the Effective Date, a Claim may be amended as agreed upon by the Debtor and the holder of the Claim and the Debtor to decrease, but not increase, the face amount thereof.

7.3     Reserve for Disputed Claims.    The Debtor shall reserve, on account of each holder of a Disputed Claim, in Cash, the amount that would otherwise be distributable to such holder were such Disputed Claim an Allowed Claim (the "Disputed Claims Reserve"). Distributions to holders of Disputed Claims shall be made within fourteen (14) days after an Order Allowing the Claim becomes Final Order and shall not include any interest, regardless of when distribution thereon is made. All funds reserved under this Section shall be maintained in a depository authorized for the Eastern District of New York.

## ARTICLE VIII
## EFFECT OF CONFIRMATION, DISCHARGE,
## SURRENDER AND CANCELLATION OF CLAIMS

8.1     No Discharge Under the Plan.    Because the Plan contemplates the liquidation of the Debtor's assets, the Confirmation Order shall not operate as a discharge pursuant to §1141(d)(1) of the Bankruptcy Code.

8.2    <u>Exculpation</u>. Neither the Debtor nor any of its respective members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns (the "<u>Released Parties</u>") shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with this Chapter 11 Case or the Plan except with respect to (a) their obligations under the Plan and any related agreement or (b) for bad faith, willful misconduct, gross negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or ultra vires acts. Notwithstanding any other provision hereof, nothing in Sections 8.2 or 8.3 hereof shall effect a release of any Claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any Claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Debtor, or any of its members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns (the "<u>Debtor Released Parties</u>"), nor shall anything in Sections 8.2 or 8.3 hereof enjoin the United States or any state or local authority from bringing any Claim, suit, action or other proceedings against the Debtor Released Parties referred to herein for any liability whatever, including without limitation, any Claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority, nor shall anything in this Plan exculpate any party from

any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Parties, or (b) limit the liability of the Debtor's Professionals for malpractice pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct.

8.3     Confirmation Injunction. Effective on the Effective Date, all persons or entities who have held, hold or may hold Administrative Claims or Claims against or Interests in the Debtor are enjoined from taking any of the following actions against or affecting the Debtor or Assets of the Debtor with respect to such Claims, Interests or Administrative Claims, except as otherwise set forth in the Plan and other than actions brought to enforce any rights or obligations under the Plan or appeals, if any, from the Confirmation Order or other pending appeals of orders of the Bankruptcy Court:

(a)     Commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, arbitration, or other proceeding of any kind against the Debtor or the assets of the Debtor;

(b)     Enforcing, levying, attaching, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor, the assets of the Debtor;

(c)     Creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the assets of the Debtor or the Assets;

(d)     Asserting any setoff, right of subrogation, or recoupment of any kind, directly or indirectly, or against the Debtor, the assets of the Debtor; and

(e)     Proceeding in any manner and any place whatsoever that does not conform to or comply with the provisions of the Plan.

8.4     <u>Payment of Estate Professionals for Post-Confirmation Date Services</u>. The reasonable compensation and out-of-pocket expenses incurred post-Confirmation Date by professionals retained by the Debtor during this Chapter 11 Case shall be paid by the Debtor within ten (10) days upon presentation of invoices for such post-confirmation professional services. All disputes concerning post-confirmation fees and expenses shall be subject to Bankruptcy Court jurisdiction.

## ARTICLE IX
## EVENTS OF DEFAULT

9.1     An Event of Default shall occur if the Debtor shall fail to make any payment when due or shall fail to comply with any other material terms of this Plan, and written notice of same has been provided to the Debtor and the Bankruptcy Court.

9.2     Following an Event of Default, if such Default has not been cured within ten (10) days thereafter, any holder of a Claim, payment of which is in Default, shall have the right to (a) accelerate and demand payment due to such holder under the Plan; and/or (b) commence an action against the Debtor in the Bankruptcy Court or United States District Court to compel payment.

## ARTICLE X
## RETENTION OF JURISDICTION

10.1     The Bankruptcy Court shall retain jurisdiction of the Chapter 11 Case:

(a)     To determine all controversies relating to or concerning the allowance of

Claims upon objection to such Claims by any party in interest;

(b)     To determine requests for payment of Administrative and proof of Claims, including any and all Administrative Professional Fee Claims;

(c)     To determine and, if necessary, liquidate, any and all Claims arising from the rejection of any executory contracts or unexpired leases;

(d)     To determine any and all applications, adversary proceedings, and contested or litigated matters over which the Bankruptcy Court has subject matter jurisdiction pursuant to 28 U.S.C §§ 157 and 1334;

(e)     To determine all disputed, contingent or unliquidated Claims;

(f)     To determine requests to modify the Plan pursuant to §1127 of the Bankruptcy Code or to remedy any defect or omission or reconcile any inconsistencies in this Plan or Confirmation Order to the extent authorized by the Bankruptcy Code;

(g)     To make such orders as are necessary or appropriate to enforce and carry out the provisions of the Plan;

(h)     To resolve controversies and disputes regarding the interpretation or enforcement of the terms of the Plan and the Confirmation Order; and

[remainder of the page intentionally left blank]

(i)      To enter a final decree closing the Chapter 11 Case.

Dated:  White Plains, New York
        May13, 2013

                                    THREE ON TWO FOURTEEN, LLC
                                    *Debtor*

                                    By*:____/s/ John Ruha_____*
                                    John Ruha, Managing Member


JOHN RUHA                           DELBELLO DONNELLAN WEINGARTEN
*Personal Guarantor of obligations*  WISE & WIEDERKEHR, LLP
*set forth in Plan Section 3.2(b)*   *Attorneys for the Debtor*


_/s/ John Ruha_____       By:__/s/ Erica Feynman Aisner_____
                                        Erica Feynman Aisner
                                        One North Lexington Avenue
                                        White Plains, New York 10601
                                        (914) 681-0200